Ernest R. DAVIS, Appellant,

v.

Harold E. BLACK, Superintendent, Kentucky State Reformatory, Appellee.

Court of Appeals of Kentucky.

Dec. 13, 1974.

Rehearing Denied Feb. 21, 1975.

Anthony M. Wilhoit, Public Defender, Jim R. Early, Asst. Public Defender, Frankfort, for appellant.

Ed W. Hancock, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

This is a habeas corpus proceeding in which Ernest R. Davis appeals from a judgment declining to effect his release from custody of the superintendent of the Kentucky State Reformatory at LaGrange.

On December 22, 1972, after serving almost a year on a 3-year combined term of imprisonment to which he had been sentenced following conviction for the felonies of uttering a worthless check or checks (KRS 434.070) and forgery (KRS 434.-130), Davis was released on parole under the provisions of KRS Ch. 439. One of the conditions of his parole was that he not leave the state without permission of his local parole officer, Sam Simonton. On August 4, 1973, he was arrested in Sullivan County, Tennessee, on charges of cashing worthless checks. The record before us does not disclose what happened with respect to these charges except for a field report by the Tennessee Division of Probation and Paroles stating that on March 8, 1974, Davis was brought before the Sullivan County, Tennessee, Criminal Court "for his probation hearing," that the judge of that court "decided to let the subject return to the State of Kentucky to serve the remainder of his sentence as an absconder before making his decision as to whether the subject would be a reliable candidate for probation," and that "the subject" had signed a waiver of extradition but would be returned to Tennessee upon completing service of his sentence in Kentucky. Though it is not documented in the record, evidently he had been held in custody by the Tennessee authorities throughout the period between his arrest and the probation hearing. In due course, on March 22, 1974, he was received at the Kentucky State Reformatory. A hearing on parole revocation was held on April 11, 1974, and resulted in revocation of his parole status. Shortly thereafter, through the good offices of the public defender, he launched this shot for the moon in the form of a petition for habeas corpus.

The theory on which it is contended, with all the outward appearances of complete sobriety, that he is entitled to immediate restoration of his parole status is that under the principles of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the revocation of parole is void because he was not afforded a preliminary hearing as required by that opinion.

*Morrissey* enunciates a general principle that due process requires a preliminary hearing "at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available," for the purpose of ascertaining "whether there is probable cause to hold the parolee for the final decision of the parole board on revocation." Other authority holds that undue delay in conducting such a hearing vitiates its purpose and effectively aborts all further proceedings to revoke the parole by reason of the particular violation in question, but we do not find it necessary to reach that point in this case.

Actually, the parole authorities did the best they could in the way of conducting a preliminary hearing promptly after the violation. Davis had been living at Cumberland, in Harlan County, Kentucky, under the parole supervision of Simonton. On August 7, 1973, Simonton was informed by police authorities that Davis was in jail at Blountville, Tennessee. He immediately verified the fact through a visit to Davis's wife at Cumberland. On August 9, 1973, a preliminary hearing was held in the Harlan Parole Office at Harlan, Kentucky, for the purpose of determining whether there was probable cause to believe that Davis had violated the terms of his parole. The determination was made by an officer other than Simonton. The hearing therefore conformed to the requirements of *Morrissey* except that it was not held in the Tennessee jail and Davis, unfortunately, was absent.

■ Ordinarily, of course, a hearing held for the purpose of divesting a person of a valuable right could hardly be said to consist with due process if that person were denied the opportunity of appearing in person. There is, however, nothing in *Morrissey* to suggest that its requirements with respect to a preliminary hearing would apply to the facts of this case. Though Davis cites other decisions, not binding upon this court, which he claims do so hold, we think it befits the spirit of the season to observe that the less said of those opinions, even to identify them, the more merciful.

■ There are some acts and circumstances which by their nature require little or no inquiry in order to be established. If, for example, it had been discovered that Davis had been convicted of another felony, what would be the issue to be resolved in a "probable cause" hearing pre-liminary to revocation of his parole? Mistaken identity, perhaps, or lack of finality of the judgment, but those are not matters to which "freshness" of information is vital or "sources of information" may disappear, dry up or blow away. And in the instance of an absconder, how could it be a sensible requirement that he be present at a hearing to determine whether he is in Hong Kong? The public defender apparently would have it that the authorities in Hong King should be pressed into service to conduct the hearing, or a commission should at once be dispatched there (by air travel, we suppose, since the information might no longer be fresh, or the sources available, following a long journey by sea) in order to secure proper venue and insure the presence of the defendant. Then and only then, at this properly constituted hearing, conducted perhaps by a local officer of the Salvation Army, could the last vital piece of evidence be fitted into place—that is, that the parolee did not have his supervising officer's permission to go there.

Counsel for Davis stresses the necessity for a parolee to have the opportunity of presenting mitigating circumstances. The answer is that mitigating circumstances ordinarily would not be relevant to a determination of probable cause, and are mentioned in *Morrissey* only in connection with the revocation hearing itself.

Though a preliminary hearing of sorts was conducted in Harlan, we do not decide that it was necessary. Suffice it to say that in our opinion *Morrissey* does not apply and that it would somehow demean the highest court of this country for us to hold otherwise.

The judgment is affirmed.

All concur.